ATTORNEY FOR APPELLANT
Jeremy K. Nix
Matheny, Hahn, Denman & Nix LLP
Huntington, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana



FILED
Jun 16 2016, 9:50 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 35S02-1601-CR-37

THOMAS L. HALE,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Huntington County Superior Court, No. 35D01-1405-FA-132
The Honorable Jeffrey R. Heffelfinger, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 35A02-1501-CR-57

**June 16, 2016**

**Massa, Justice.**

Thomas Hale appeals his conviction for dealing in methamphetamine, on the sole grounds that the trial court abused its discretion in failing to grant him, at public expense, depositions of two State's witnesses. We find that our prior precedent compels us to agree with Hale and reverse his conviction, but take this opportunity to provide guidance as to how trial courts should address such motions in the future.

**Facts and Procedural History**

Hale was charged with Class A Dealing in Methamphetamine in Huntington, Indiana. Hale requested a public defender on the grounds of indigence, and the trial court appointed him counsel. After learning that two of his potential co-defendants, Amanda Casto and Greggory Fisher, entered pleas with the State, Hale moved to depose them at public expense. The trial court denied Hale's motion the same day, without a hearing or any findings of fact in support. Casto and Fisher testified at trial, without an objection from Hale. The jury found him guilty, and the trial court sentenced Hale to forty years' imprisonment.

Hale appealed, and a majority of the Court of Appeals affirmed, finding Hale waived his objection by failing to re-raise it when Casto and Fisher were called to testify. Hale v. State, 44 N.E.3d 130, 133–34 (Ind. Ct. App. 2015). The dissent, however, would have granted Hale's requested relief on the basis of our decision in Murphy, where this Court held that denying a defendant the opportunity to depose State witnesses at public expense was an abuse of discretion and reversible error. Id. at 134–35 (Mathias, J., dissenting) (citing Murphy v. State, 265 Ind. 116, 120–21, 352 N.E.2d 479, 482–83 (1976)).

We granted transfer, thereby vacating the Court of Appeals opinion below. Hale v. State, 43 N.E.3d 1278 (Ind. 2016) (table); Ind. Appellate Rule 58(A).

**Standard of Review**

"Our standard of review in discovery matters is limited to determining whether the trial court abused its discretion." Crawford v. State, 948 N.E.2d 1165, 1169 (Ind. 2011) (quoting Terre Haute Reg'l Hosp., Inc. v. Trueblood, 600 N.E.2d 1358, 1362 (Ind. 1992)). The trial court abuses its discretion when its "decision is against the logic and effect of the facts and circumstances before the court." Jacobs v. State, 22 N.E.3d 1286, 1288 (Ind. 2015). "We do not reweigh the evidence;

rather, we determine whether the evidence before the trial court can serve as a rational basis for its decision." DePuy Orthopaedics, Inc. v. Brown, 29 N.E.3d 729, 732 (Ind. 2015).

## The Trial Court Should Issue Findings When Denying an Indigent Defendant's Motion to Depose State Witnesses at Public Expense.

Depositions are a routine component of pre-trial practice, both in civil and criminal matters. See Ind. Trial Rule 30(A) ("After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination."); Ind. Crim. Rule 21 ("The Indiana rules of trial and appellate procedure shall apply to all criminal proceedings so far as they are not in conflict with any specific rule adopted by this court for the conduct of criminal proceedings."); see also Ind. Code § 35-37-4-3 (2014) ("The state and the defendant may take and use depositions of witnesses in accordance with the Indiana Rules of Trial Procedure."). Typically, leave of court is not required in order to depose a witness, see Ind. Trial Rule 30(A), but as we noted in Murphy, "inasmuch as the defendant here was an indigent and the cost of such action would ultimately have had to have been paid from public funds, subject to the approval of the court, it was altogether appropriate for counsel to seek prior approval." 265 Ind. at 120, 352 N.E.2d at 482; see also Ind. Code § 33-37-2-3(a) (2008) (requiring the court to determine whether a defendant is indigent prior to imposing court costs); Ind. Code § 33-40-8-2 ("A judge shall establish the fee to be paid to an attorney or attorneys for providing service to poor people.").

The Indiana Rules of Trial Procedure came into force in 1970, and just a year later, this Court laid out the following three-part balancing test for addressing a defendant's discovery request in a criminal case[1]: "(1) Is there a sufficient designation of the items sought to be

---

[1] See In re WTHR-TV, 693 N.E.2d 1, 6 n.4 (Ind. 1998) ("This test originated in Dillard v. State, 257 Ind. 282, 274 N.E.2d 387 (1971), decided shortly after the Trial Rules came into force in 1970.").

discovered?"; "(2) Is the item sought to be discovered material to the defense?"; and "(3) Has the State made a sufficient showing of its paramount interest, if any, in non-disclosure?" Dillard v. State, 257 Ind. 282, 291–92, 274 N.E.2d 387, 392 (1971). Five years later, Murphy tacitly applied the Dillard test to a defendant's request to depose witnesses at public expense, finding the trial court's denial of the request an abuse of discretion. See Murphy 265 Ind. at 120, 352 N.E.2d at 482 ("In this case, there was no showing that the defendant's purpose was not bona fide or that there was any paramount interest of the State in non-disclosure."). And in reversing the conviction, Murphy further held that the harmless error doctrine was "inapposite to the issue," irrespective of the fact that the defendant's task of rebutting the State's *other* evidence "seem[ed] insurmountable":

> We cannot presume, as a matter of law, that no exculpatory or mitigating evidence would have surfaced from the depositions sought. Even if it were determined retrospectively that nothing in aid of his defense was discoverable, we could not discount the effect of a denial. Effective counseling is dependent upon knowledge of the facts, and it is essential that weaknesses as well as strengths be discovered and intelligently assessed.

Id. at 121, 352 N.E.2d at 482–83.

Here, Hale sought to depose two State's witnesses, after they had pleaded guilty to pending charges and were disclosed as State's witnesses. On its face, the motion clearly satisfied the first two parts of the Dillard test: it identified the two witnesses sought to be deposed and why the proposed deponents were material to the State's case. And Hale even went *beyond* these requirements, noting how long the depositions were expected to last (a mere half-hour each), and that counsel had already coordinated a deposition time with counsel for both of the proposed deponents so that the depositions could occur on the same day, still some three weeks in advance of the date then scheduled for trial. Yet the motion was denied the same day it was filed, without explanation. Murphy confronted virtually identical facts and found reversal of the conviction mandatory. See Murphy, 265 Ind. at 119–20, 352 N.E.2d at 481–82 ("There was no showing of undue burden or expense and no move for any protective order. The petition appears to have been timely filed, under the circumstances of the case, and the record discloses no findings by the trial

4

judge to warrant a denial.") (noting also that the defendant sought to depose these witnesses three weeks in advance of the scheduled trial date).

The State argues that Murphy is inapplicable because Hale waived his claim by failing to re-raise his objection to (and, indeed, performed a vigorous cross-examination of) these two witnesses at trial. The purpose of requiring a party to contemporaneously object is "to promote a fair trial by preventing a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him." Robey v. State, 7 N.E.3d 371, 379 (Ind. Ct. App.), trans. denied, 11 N.E.3d 923 (Ind. 2014). However, "whenever possible, we prefer to resolve cases on the merits instead of on procedural grounds like waiver." Pierce v. State, 29 N.E.3d 1258, 1267 (Ind. 2015). It does not appear that in Murphy the defendant raised any trial objection to the witnesses whose depositions he had previously sought. It is also unclear whether the Murphy Court found the pretrial motion was sufficient to preserve the claim on appeal, or whether the Court found the denial of the defendant's requested depositions sufficiently interfered with due process to constitute fundamental error.[2] And yet the Murphy Court reached the merits of the case and reversed, despite acknowledging the lack of any real prejudice to the defendant. 265 Ind. at 119–20, 352 N.E.2d at 481–83. We therefore find it unnecessary to address this ambiguity in appellate posture in detail, as the outcome remains clear: given how closely these facts parallel those in Murphy, which reversed the conviction, it was an abuse of discretion for the trial court to deny Hale his requested depositions, and Hale's conviction too must be reversed.

---

[2] The fundamental error doctrine permits consideration of issues waived on appeal "only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." Halliburton v. State, 1 N.E.3d 670, 678 (Ind. 2013) (quoting Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006)).

That being said, we also wish to give our trial courts further guidance as to how to treat such motions in the future. We have not previously had occasion to revisit Murphy,[3] but we have upheld and more fully developed the three-part Dillard test several times, most recently in Crawford: "(1) there must be sufficient designation of the items sought to be discovered (particularity); (2) the items requested must be material to the defense (relevance or materiality); and (3) if the first two requirements are met, the trial court *must grant the request* unless there is a showing of paramount interest in nondisclosure." 948 N.E.2d at 1168 (emphasis added). Moreover, these requirements are not to be "construed strictly against the defendant but should be administered so as to maximize pre-trial discovery and the benefits to the judicial system which flow therefrom." Id. at 1169 (quoting Dillard, 257 Ind. at 291, 274 N.E.2d at 392).

This test does not, however, address several issues which could impact the "materiality" of the proposed depositions, particularly since they are being conducted at public expense. For instance, on average trial testimony is thought to be briefer than deposition testimony "since the issues are less well developed at the pretrial stage," David Crump, On the Uses of Irrelevant Evidence, 34 Hous. L. Rev. 1, 52 n.238 (1997), and trial counsel may be concerned about maintaining the attention of the judge or jury; thus the expense of conducting such depositions could significantly increase the overall costs of trial—costs which the taxpayers would ultimately bear. It is also plausible that a defendant could attempt to utilize depositions as a harassment technique, by forcing his or her victims to unnecessarily relive the experience without the defendant having any real expectation of obtaining new information.[4] Moreover, if the defendant's

---

[3] We agree with Hale that our subsequent decision in O'Conner v. State, 272 Ind. 460, 462, 399 N.E.2d 364, 366 (1980), overruled on other ground by Watts v. State, 885 N.E.2d 1228 (Ind. 2008), is distinguishable from Murphy, as O'Conner dealt with a *surprise* witness called by the State, and the defendant first moved to depose the witness during trial.

[4] Indeed, Indiana Trial Rule 26(C) expressly permits the trial court, upon a showing of good cause, to prohibit a deposition which would cause "a party or person . . . annoyance, embarrassment, oppression, or undue burden or expense."

proposed deponents possess factual knowledge only marginally material to his or her case, such depositions could amount to little more than a fishing expedition, designed to *impede* the administration of justice rather than promote it.[5]

Given these competing concerns, we believe that when the trial court denies an indigent defendant's motion to conduct a deposition at public expense, the court should issue factual findings addressing each part of the Dillard/Crawford test. The trial judge is ultimately in the best position to consider the sincerity of the parties' arguments regarding the three-part test, as well as the overall costs associated with the proposed depositions, and potential alternatives that may better promote pre-trial efficiency of the case.[6] But without the benefit of *knowing* the trial court's

---

[5] Our federal counterparts, recognizing this concern, amended their version of Rule 26 in 1983 to require an attorney certification with every deposition notice, that it is not being "interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1)(B)(ii); see also Advisory Committee Notes to the 1983 Amendments to the Federal Rules of Civil Procedure, 97 F.R.D. 165, 218 (1983) ("[Rule 26(g)] provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection."). Indeed, federal criminal defendants are not even *entitled* to depose prospective witnesses, absent a need "to preserve testimony for trial" based on "exceptional circumstances and in the interest of justice," or unless the government consents. Fed. R. Crim. P. 15(a), (h).

[6] Indeed, we have frequently noted the multitude of considerations that are relevant to the trial court's proper application of this test. See, e.g., In re WTHR-TV, 693 N.E.2d at 6–8 (Ind. 1998) (describing in detail how each of these three factors is intended to operate, and concluding that "[u]ltimately these factors involve a balancing test that includes evaluation of the relevance of the material, its availability from other sources, the burden of compliance measured in terms of difficulty, and the nature and importance of any interests invaded"). And it should also be noted that there are alternatives to a deposition which may nevertheless ensure that the party "receive[] that benefit which the right to depose a witness is intended to provide the deposition taker." Corley v. State, 455 N.E.2d 945, 951 (Ind. 1983) (finding new trial improperly granted, and thus Double Jeopardy violated, in order for prosecution to conduct deposition of surprise defense witness, where prosecution was able, among other things, to extensively question the witness during the first trial outside the presence of the jury). For instance, in Marion Superior Court, "[a]ny sworn tape-recorded interview in which the prosecutor, the defense attorney and the witnesses are present shall be considered a deposition under the Indiana Trial Rules. Deputy prosecutors and public defenders shall cooperate in using such recorded statements instead of formal depositions under any circumstance that will expedite case preparation." Marion LR49-CR00-107(5). Several other counties also have local rules which seek to address this issue. See Blackford LR05-CR00-204 (outlining the preparation and use of "sworn statements" in "pauper criminal cases"); Randolph LR68-CR00-204 (same); Hancock LR30-TR00-05

rationale, our appellate courts are forced to presume that "exculpatory or mitigating evidence would have surfaced from the depositions sought." <u>Murphy</u>, 265 Ind. at 121, 352 N.E.2d at 483. Specific findings by the trial court, however, should resolve that ambiguity going forward.

## Conclusion

For the foregoing reasons, we reverse Hale's conviction for Class A Dealing in Methamphetamine and remand for a new trial.

Rush, C.J., and Rucker, David and Slaughter, JJ., concur.

---

(prohibiting court-appointed pauper counsel from using private reporting firms for depositions "[u]nless leave is granted for good cause" by the trial court). These common sense rules all recognize that public criminal justice resources are not inexhaustible and that the judiciary shares responsibility for fiscal prudence with the other branches.