## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2019, 6:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Yvette M. LaPlante
Keating & LaPlante, LLP
Evansville, Indiana

Barry M. Blackard
Blackard & Brinkmeyer, LLC
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Justin M. Hornby,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

January 31, 2019

Court of Appeals Case No.
18A-CR-1227

Appeal from the
Gibson Superior Court

The Honorable
Robert D. Krieg, Judge

Trial Court Cause No.
26D01-1705-F3-437

**Kirsch, Judge.**

[1]   In this interlocutory appeal, Justin M. Hornby ("Hornby") appeals the trial court's denial of his request for a second deposition to be taken of the alleged

victim in this case. He raises the following issue for our review: whether the trial court abused its discretion when it denied his request to depose the victim a second time.

[2] We affirm.

## Facts and Procedural History

[3] On May 3, 2017, Hornby was charged with rape[1] as a Level 3 felony for allegedly raping R.C. On May 5, Hornby was appointed indigent counsel, who subsequently filed a "Motion to Take Deposition at Public Expense" in order to depose R.C., among others. *Appellant's App. Vol. II* at 21. Hornby's motion was granted, and R.C. was deposed by Hornby's appointed counsel on June 20, 2017.

[4] Several weeks later, Hornby hired new counsel, who filed an appearance on August 18, 2017. *Id.* at 43-44. Subsequently, Hornby indicated that he wished to re-depose R.C. The State filed an objection to a second deposition, asserting that the victim had previously been deposed by a qualified defense attorney who was experienced in sex crime cases, that the only new evidence since discovery was provided to Hornby was the laboratory analysis indicating the presence of Hornby's DNA within R.C.'s body, and that depositions of crime victims are very emotional and intimidating. *Id.* at 55.

---

[1] *See* Ind. Code § 35-42-4-1.

[5]     A hearing was held on the State's objection, at which the State reiterated its arguments raised in its earlier objection and additionally argued that the first deposition was "fairly extensive" and lengthy, and that despite the new DNA test results, nothing could be gained regarding that evidence from the victim and that the information would be proper for depositions of the DNA analyst and the person who obtained the sample. *Tr. Vol. 2* at 5. The State asserted that there had to be "some justice for the victim" because the crime of rape is "a very personal, traumatic, emotional thing, and to sit through yet another deposition knowing we're going to trial and they're going to have to do it all again at trial . . . is more than justice requires." *Id*. Hornby argued that a second deposition of R.C. was needed so that defense counsel, who was hired after the first deposition, could have an opportunity to observe the witness's demeanor because counsel did not want trial to be the first opportunity to see her face to face. *Id*. at 6. Hornby further claimed that he needed to depose R.C. "especially on some of these issues that [the State] touched on that were not asked in the first deposition." *Id*.

[6]     After argument was heard, the trial court found that Hornby already had an opportunity to depose R.C. and that an extensive deposition was taken. *Id*. The trial court further found that no new evidence, other than the DNA results, had been shown and that the DNA results did not require questioning of the victim but rather of the laboratory analyst. *Id*. at 7. The trial court also noted that it had the power "to prevent discovery that might unjustifiably delay [the] proceedings," which a second deposition would do. *Id*. Therefore, the trial

court found that a second deposition was not necessary to further the interests of justice and denied Hornby's request to depose R.C. a second time. *Id.* Hornby now appeals the trial court's decision in this interlocutory appeal.

## Discussion and Decision

[7] The standard of review in discovery matters is limited to determining whether the trial court abused its discretion. *Hale v. State*, 54 N.E.3d 355, 357 (Ind. 2016) (citing *Crawford v. State*, 948 N.E.2d 1165, 1169 (Ind. 2011)). The trial court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before the court. *Id*. (citing *Jacobs v. State,* 22 N.E.3d 1286, 1288 (Ind. 2015)). We do not reweigh the evidence, and instead, we determine whether the evidence before the trial court can serve as a rational basis for its decision. *Id*. (citing *DePuy Orthopaedics, Inc. v. Brown,* 29 N.E.3d 729, 732 (Ind. 2015)).

[8] Hornby argues that the trial court abused its discretion when it denied his request to depose R.C. for a second time. Hornby contends that the trial court's ruling did not meet the standards set out in Indiana Trial Rule 26(C) that allow for the denial of a request to depose a witness. He asserts that he presented adequate reasons as to why a second deposition was necessary, including wanting an opportunity to observe R.C.'s demeanor and to question R.C. about issues not asked in the first deposition. Hornby maintains that the inability to re-depose R.C. will reduce new counsel's ability to effectively prepare for cross-

examination at trial and to effectively advise him regarding the likelihood of success at trial and on any offers made by the State.

[9] Indiana Trial Rule 26(A) states that parties may obtain discovery through oral depositions, among other methods, and the frequency of use of such method is not limited unless the trial court otherwise orders under subsection (C) of the rule. Indiana Trial Rule 26(B), addresses the scope of discovery and provides that the frequency or extent of the use of the discovery methods provided for in the rule "shall be limited" if the trial court determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought or; (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Ind. Trial Rule 26(B)(1).

[10] Subsection (C) of the rule further provides that, upon motion by any party, and for good cause shown, the trial court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" including that the discovery not be

had. Pursuant to the trial rules, our Supreme Court has held a three-part test should be used to address a defendant's discovery request in a criminal case:

> (1) there must be sufficient designation of the items sought to be discovered (particularity); (2) the items requested must be material to the defense (relevance or materiality); and (3) if the first two requirements are met, the trial court *must grant the request* unless there is a showing of "paramount interest" in nondisclosure.

*Hale,* 54 N.E.3d at 359 (emphasis in original) (quoting *Crawford,* 948 N.E.2d at 1168). Our Supreme Court has further noted several issues that could impact the "materiality" prong, including that a defendant could try to use depositions as "a harassment technique, by forcing his or her victims to unnecessarily relive the experience without the defendant having any real expectation of obtaining new information" and that a deposition could amount to little more than a fishing expedition. *Id.* at 359-60.

[11]  Here, the trial court found that Hornby had already had an opportunity to depose R.C. in an extensive deposition and that a second deposition was not needed to further the interest of justice. *Tr. Vol. 2* at 6-7. It further found that Hornby had not shown that there was any new evidence other than the DNA results to be examined through a deposition and that a deposition of the DNA analyst would better serve as a means to delve into that evidence. *Id*. at 7. The trial court stated that it had an inherent power to prevent discovery that might unjustifiably delay the proceedings and concluded that Hornby's request would do so. *Id.*

[12] Under the three-part test, Hornby was required to show a sufficient designation of what he sought to discover through a second deposition of R.C. Hornby asserts that a second deposition was necessary to observe R.C.'s demeanor because otherwise the only opportunity to observe her would be in the courtroom at trial. However, a video-recorded forensic interview of R.C. was taken by the police a few days after the alleged rape occurred. *Appellant's App. Vol. II* at 4, 148. Therefore, an alternate means existed for Hornby to observe R.C.'s demeanor in order to make a credibility determination prior to trial. Trial Rule 26(B) provides that a trial court shall limit discovery if the evidence sought is cumulative or duplicative of other evidence or is obtainable through other means that are more convenient or less burdensome. Observing a video-recorded forensic interview of R.C. that had already been completed to observe the victim's demeanor is more convenient and less burdensome than completing yet another interview of the victim via deposition.

[13] Hornby also maintained that he wished to depose R.C. a second time in order to question her "on some of these issues that [the State] touched on that were not asked in the first deposition." *Tr. Vol. 2* at 6. The only evidence that the State referenced was the DNA laboratory results indicating the presence of Hornby's DNA within R.C.'s body. *Id*. at 5. Any information regarding the laboratory results would be better sought from the DNA analyst who performed the analysis. Hornby does not give any specific designation of what he sought to discover through a second deposition. Therefore, because no particularity was shown as to what was sought, the first part of the test was not met.

[14] Because Hornby has not specified what new information he sought to glean from a second deposition of R.C., he has likewise not shown that the information is material to his defense. As to the DNA evidence, R.C. would not have any insight as to how the tests were done and how the results had been obtained. The only information that she could give was regarding her story as to the source of the DNA, and she had already been thoroughly questioned in her first deposition regarding that information. *Appellant's App. Vol. II* at 87-162. The DNA results merely corroborated R.C.'s prior statements to the police and her testimony in the first deposition regarding the origin of the DNA. Further, Hornby's claim that a second deposition was necessary to observe R.C.'s demeanor does not make clear its relevance when such information is available from another source, the video-recorded forensic interview of R.C.

[15] Thus, as the first two prongs of the test have not been met, it is not necessary to determine whether there was a showing of "paramount interest" in nondisclosure. *Hale*, 54 N.E.3d at 359. We, therefore, conclude that the trial court did not abuse its discretion when it denied Hornby's request to take a second deposition of R.C.

[16] Affirmed.

Riley, J., and Robb, J., concur.